(No. 3479— ▮▮▮▮▮▮▮▮▮▮)

Marie Pickett, Claimant, vs. State of Illinois, Respondent.

*Opinion filed March 11, 1942.*

James E. Londrigan, for claimant.

George F. Barrett, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

ECKERT, J.

On November 29, 1939, claimant, Marie Pickett, was employed as an attendant at the Kankakee State Hospital, a public institution owned and operated by the State of Illinois under the direction of the Department of Public Welfare. The institution maintains a carpenter shop, employs an electrician to do necessary electrical work, and maintains a kitchen in which sharp-edged cutting tools are used in the preparation of meals for inmates. On the day in question, claimant stepped on a window sill in the hospital to pull down the shade; the window sash came out causing her to fall to the floor, a distance of four and one-half feet. As a result of the fall her right leg was broken at the knee. She was furnished necessary first aid by the respondent, and at respondent's request subsequently employed Dr. Daniel K. Hur for necessary medical and surgical treatment.

Claimant was totally disabled from the date of the accident, until July 1, 1940, but she received pay for one month and one day while so incapacitated. Her earnings at the time of the accident were $54.60 per month, and her earnings for the year preceding the accident were $649.20, or an average weekly wage of $12.48. At the time of the injury, claimant had a child under the age of sixteen years dependent upon her for support.

Under Section 3 of the Workmen's Compensation Act, the provisions of that Act apply automatically to the State when it is engaged in any of the enterprises therein enumerated and which are declared to be extra-hazardous. The State, in the operation of the Kankakee State Hospital, is engaged in such an extra-hazardous enterprise. *Miele* vs. *State of Illinois*, 9 C. C. R. 170.; *Lynch* vs. *State of Illinois*, 9 C. C. R. 290. The enterprise being extra-hazardous, all employees of the institution come within the provisions of the Act irrespective of whether or not they themselves are directly exposed to the hazard. *Ascher Bros.* vs. *Industrial Commission*, 311 Ill. 258; *Illinois Publishing Company* vs. *Industrial Commission*, 299 Ill. 189. At the time of the injury the

claimant and respondent were operating under the provisions of the Workmen's Compensation Act of this State.

It appears from the record that claimant's injury occurred during her normal working hours and while she was on duty under the supervision of her immediate superior. At the time of the accident, she was doing the routine cleaning of the ward to which she was assigned. It thus appears that claimant's accident arose out of and in the course of her employment.

Claimant has incurred doctor bills in the total amount of $110.00 which appear to be reasonable and necessary charges for the services rendered. In view of the fact that respondent requested claimant to secure her own physician and surgeon, claimant is entitled to an allowance for these services.

The uncontradicted testimony is to the effect that claimant was temporarily totally disabled from November 29, 1939, to July 1, 1940, a period of thirty and four-sevenths weeks. It is admitted, however, that claimant was paid during this period for November 30th and for the entire month of December, 1939, on the basis of $54.60 per month, making a total of $56.42 to be deducted from any award for temporary total disability.

In addition to her claims for an allowance for medical and surgical services and for temporary total disability, claimant alleges a permanent partial loss of the use of her right leg. Dr. Hur, who testified on her behalf, fixed the loss at approximately twenty per cent. He testified that claimant had about ninety degrees of flexion in her right leg, and that the normal amount of flexion in such joint is one hundred and twenty to one hundred and thirty-five degrees. Dr. Hur also testified that claimant lacked two or three degrees of complete extension. Claimant testified that her leg is sore and painful when she stands upon it for any length of time, and when there are changes in the weather; that she cannot straighten it out; that she still has pain when the leg is at rest; that she is unable to climb stairs without support. When the testimony was taken in the case, claimant was still being treated, and apparently had considerable callous formation in the knee joint as a result of the fracture. Her walk was not a normal gait in that she favored her right side although there was no shortening.

From a careful consideration of the entire record, the court finds that claimant has suffered a twenty per cent permanent loss of the use of her right leg, and claimant is therefore entitled to have and receive from the respondent the following sums, to-wit:

(1) The sum of $100.00 for the use of Dr. Daniel K. Hur for and on account of medical and surgical services, and the sum of $10.00 for the use of Dr. Hamilton for like services.

(2) $11.00 per week for thirty and four-sevenths weeks, or the sum of $336.28, from which must be deducted the sum of $56.42, heretofore paid to claimant, leaving a balance of $279.86.

(3) The further sum of $11.00 per week for twenty per cent of one hundred and ninety weeks, or thirty-eight weeks, to-wit: $418.00 for the permanent loss of twenty per cent of the use of her right leg.

(4) Since this injury occurred subsequent to July 1st, 1939, the award must be increased ten per cent or $80.79, making a total due claimant of $888.65.

Award is therefore entered in favor of the claimant for the said sum of $888.65, all of which is accrued and is payable forthwith.

This award being subject to the provisions of an Act entitled "An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof," approved June 30th, 1941, and being by the terms of such Act, subject to the approval of the Governor, is hereby, if and when approval is given, made payable from the appropriation from the General Revenue Fund in the manner provided for in such Act.