Marion F. Drews, Plaintiff-Appellant, v. Helen L. Mason, Defendant-Appellee.

Gen. No. 10,323.

Third District.

February 21, 1961.

Unger, Litak & Groppi, of Danville, for appellant.

Sebat, Swanson, Banks & Jones, of Danville (Ralph J. Swanson, of counsel) for appellee.

REYNOLDS, J.

Plaintiff slipped or stumbled over a wooden clothes pole or rod lying on the floor of her daughter's house, and broke the bones in her right wrist. She filed suit against her daughter for personal injuries claiming negligence. The cause was tried before a jury and the jury returned a verdict for the plaintiff in the amount of $1500.00. This verdict was set aside and judgment notwithstanding the verdict entered for the defendant, the trial court holding in a memorandum opinion that the plaintiff was a licensee and not an invitee, and that the defendant could only be liable for concealed traps or wilful force or wanton intentional or reckless action. From that judgment the plaintiff appeals.

Prior to the date the plaintiff was injured, the mother and daughter lived three doors apart in Danville, Illinois. The home of the daughter, Helen L. Mason, was severely damaged by fire on October 27, 1958, the fire not only damaging the home, but also the contents. The daughter and her husband, Albert Mason, after the fire, went to live temporarily with the mother, Marion F. Drews, and were living there the day of the accident. After the fire, and after most

of the fire damaged debris in the Mason home had been taken out, the Masons were re-decorating their home with the help of the plaintiff, Medford E. Williams, the husband of another daughter of the plaintiff, Robert Drews, a son of the plaintiff and brother of the defendant, other relatives and neighbors. On the day plaintiff was injured, November 2, 1958, the family had had breakfast at the Drews home and Albert Mason and Helen L. Mason had left to go to their home to continue repairing and clearing up the fire damage. As the daughter left the Drews home, she said to her mother, the plaintiff, "I suppose you'll be down a little later, won't you, Mother?" and the plaintiff replied, "Yes, I'll be down after I do a few chores at home here." The defendant Helen L. Mason left the Drews home at about 8:30 a.m. The plaintiff went to the Mason home at about 10:15 a.m. and walked into the bedroom where Mr. Mason, Mrs. Mason, Robert Drews and Mr. Williams were working. Mrs. Mason was washing a round wooden clothes pole, and upon being asked by her husband to get them some coffee, left for the Drews home to make coffee, leaving Mrs. Drews, Mr. Mason, Robert Drews and Mr. Williams in the Mason home. Mrs. Mason has no definite recollection as to what she did with the clothes pole she was washing, but testified she didn't think she leaned it against the wall, but probably dropped it right there where she was washing it. After Mrs. Mason had left, Mrs. Drews stepped on or stumbled on the pole, fell and injured her wrist.

When Mrs. Drews appeared at the Mason home that morning, she was dressed in an old house dress, flat heeled shoes and a short top coat. From the date of the fire to the date of the injury, Mrs. Drews had been at the Mason home almost constantly, helping them to throw out articles not worth saving,

washing walls and scrubbing floors. The Masons testified that it was not a matter of asking Mrs. Drews to do something, but that she would see something that needed to be done and do it. Both Albert Mason and his wife Helen L. Mason testified that at no time had they directly requested the plaintiff to work at the defendant's house.

 The original complaint claimed the plaintiff was an invited guest, but this was amended to an invited "person". During the trial, Albert Mason the son-in-law of the plaintiff, named as defendant, was dismissed from the case, and the verdict of the jury was for the plaintiff against her daughter Helen L. Mason. The injuries to the plaintiff were not disputed and no question on the pleadings is raised in the appeal, except as to the post-trial motion for a new trial and that will be discussed later in this opinion. The issue before this court on the appeal is the status of the plaintiff at the time of her injury. If she was a licensee or a guest, the defendant would only be liable for wilful and wanton negligence. If she was an invitee, then the defendant would be liable for ordinary negligence. The trial court by its judgment notwithstanding the verdict held her status as that of a licensee or guest. The plaintiff in her appeal contends her status was a question of fact for the jury.

 The law is well settled that a trial court has no right to direct a verdict, or to enter a judgment notwithstanding the verdict, if there is any evidence, together with all reasonable inferences to be drawn therefrom, which would justify submission of the case to the jury. Friesland v. City of Litchfield, 24 Ill. App.2d 390, 395, 164 N.E.2d 606; Pantlen v. Gottschalk, 21 Ill. App.2d 163, 174, 157 N.E.2d 548; Wills v. Paul, 24 Ill. App.2d 417, 420, 164 N.E.2d 631. Even where the facts are admitted or undisputed but

where a difference of opinion as to the inference that may legitimately be drawn from them exists, it is primarily for the jury to draw the inference. Denny v. Goldblatt Bros., Inc., 298 Ill. App. 325, 18 N.E.2d 555; Pantlen v. Gottschalk, 21 Ill. App.2d 163, 174, 157 N.E.2d 548. And a verdict may not be set aside merely because the jury could have drawn different inferences or because judges may feel, if they did, that other conclusions than the one drawn by the jury would be more reasonable. Lindroth v. Walgreen Co. 407 Ill. 121, 94 N.E.2d 847; Cloudman v. Beffa, 7 Ill. App.2d 276, 284, 129 N.E.2d 286. While each of the cases cited present different questions, they all coincide in the rule that the trial court has no right to enter a judgment notwithstanding the verdict of the jury, except upon uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense. Merlo v. Public Service Co. of Northern Illinois, 381 Ill. 300, 45 N.E.2d 665; Friesland v. City of Litchfield, 24 Ill. App.2d 390, 395, 164 N.E.2d 606. As said in the Merlo v. Public Service Co. case, at page 311: "If there is in the record evidence which, standing alone, tends to prove the material allegations of the complaint, a motion for a directed verdict, or for judgment notwithstanding the verdict, should be denied, even though upon the entire record the evidence may preponderate against the party in opposition to such motion, so that a verdict in his favor could not stand when tested by a motion for a new trial." This rule is repeated in a recent decision, Stilfield v. Iowa-Illinois Gas & Electric Co., 25 Ill. App.2d 478, 167 N.E.2d 295, at page 482, where the court passed on the propriety of the trial court granting the defendant's motion for judgment notwithstanding the verdict. The court in that case said: "The applicable principles in passing upon a motion

for judgment n.o.v. have been stated innumerable times. This motion presents only a question of law as to whether, when all the evidence is considered, together with all reasonable inferences from it, in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case. If there is any evidence tending to sustain every element of the plaintiff's case necessary to be proved to sustain the cause of action, it is immaterial upon which side the evidence is introduced. No contradictory evidence or other evidence of any kind or character will in such case justify a judgment n.o.v., except uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but showing affirmatively a complete defense, Lindroth v. Walgreen Company, 407 Ill. 121, 130; Merlo v. Public Service Company of Northern Illinois, 381 Ill. 300, 311; Marquardt v. Cernocky, 18 Ill. App.2d 135, 138; King v. Mid-State Freight Lines, Inc., 6 Ill. App.2d 159, 162."

In applying the rule so announced, we turn our consideration to an analysis of the evidence in all its aspects most favorable to the plaintiff. It was testified by the defendant's husband that he had never asked his mother-in-law, the plaintiff to come to his house to work, and that he had never heard his wife ask her mother to come to work. That there was no such thing as to have to ask the plaintiff to do something, that if she saw it and it needed to be done she went ahead and did it. Mrs. Mason, the defendant testified that from the date of the fire to the date of the accident, her mother was there at her home, constantly helping them clean up and renovate the burned home. Mrs. Mason testified that she never came right out and asked her mother to help. The language used in the conversation between the daugh-

ter and her mother on the date of the accident, when she asked her mother if she was coming down to the Mason house, differs somewhat as to the reply of the mother, but the daughter did ask her mother if she was coming to her house. It is not disputed that the mother was dressed for working, that is, in an old house dress, low heeled shoes and a short top coat. Mrs. Drews testified she had been helping at the Mason home prior to the accident, cleaning up, washing walls and furniture, but she was not allowed to testify her purpose in going to the Mason home on the day of the accident, or what she was going to do on the day in question. She did testify she had not performed any work on the day of the accident; that she hadn't had time to start having been in the Mason home only a few minutes. The plaintiff testified that when she entered the room where her daughter was working that the daughter was in the corner with a pail of water washing something. The plaintiff stated she looked the room over and saw nothing on the floor. She did not see the defendant lay the rod on the floor and did not hear anything fall on the floor. The defendant testified she was washing this rod and while she had no distinct recollection of what she did with the rod, she did not believe she leaned it against anything but that she laid it on the floor. The evidence of the plaintiff, and of the son-in-law, Mr. Mason, was to the effect that she tripped or stumbled on this rod and fell.

The testimony of the work done by the plaintiff at the Mason home, prior to the accident, the asking by the daughter whether she would come down to the Mason home, the showing up in working clothes, all present evidence on the question of the status of the plaintiff in the Mason home at the time of the accident, whether trespasser, social guest, volunteer, licensee or invitee. The presence of the clothes rod, and

276

the testimony of the defendant that her mother was standing in front of her, and that she probably just dropped the rod on the floor where she was working and walked out, present evidence on the question of negligence, whether passive or active, on the part of the defendant. The fact that the plaintiff saw nothing on the floor, and that Williams the son-in-law of the plaintiff saw nothing on the floor until after the accident, would at least present the inference that the floor was clear, so that the question as to whether the plaintiff assumed any risk could be considered by the jury.

■ Considering all these matters in the evidence, this court believes that questions of fact as to the status of the plaintiff at the time of the accident are presented that should have been left to the jury. The jury in answer to Interrogatory No. 2 found that the plaintiff was not a social guest. She was not a trespasser. Her status, whether licensee or invitee is one of the two basic points at issue. In the opinion of this court this issue was not a question of law, but a question of fact for the jury. We cannot say, as a matter of law, when all the evidence is considered, together with all reasonable inferences from it, in its aspect most favorable to the plaintiff, there is a total failure or lack of evidence to prove any necessary element of the plaintiff's case. There is not uncontradicted evidence of facts consistent with every fact which the evidence for the plaintiff tends to prove, but which shows affirmatively a complete defense. There is very little, if any, contradictory evidence in this case. Yet, even where the facts are admitted or undisputed but where there is a difference of opinion as to the inference that may legitimately be drawn from them exists, it is primarily for the jury to draw the inference. Here, the jury did draw the inferences and returned a verdict for the plaintiff, held that the plaintiff was

not a social guest and that the defendant was not guilty of wilful or wanton misconduct. Holding that questions of fact were presented and these questions were not questions of law, we must hold that the action of the trial judge in granting a judgment n.o.v. was in error.

In so holding, this court is not unmindful of the rule as to social guests who perform minor services for the host during the visit. Such minor services will not be sufficient to alter their status as a guest. Ciaglo v. Ciaglo, 20 Ill. App.2d 360, 366, 156 N.E.2d 376; Krantz v. Nichols, 11 Ill. App.2d 37, 135 N.E.2d 816. In the Ciaglo v. Ciaglo case the mother of the defendant was visiting her son on his farm. During her visit she attended to some of the housekeeping and farm chores, among them picking wild plums for her son to sell. While picking plums she fell from a ladder and was injured. The trial judge allowed a motion for a directed verdict for the defendant on the ground that the plaintiff was a social guest, a licensee, and not an invitee. There was some testimony that cattle in the same enclosure with the plum trees had nudged or pushed over the ladder on which the plaintiff was picking the plums. There was no evidence of any negligence on the part of the defendant, passive, active, wilful, wanton or otherwise.

In the case of Krantz v. Nichols, 11 Ill. App.2d 37, 135 N.E.2d 816, a small boy had gone to his neighbor's farm to stay while his mother went to the store. The neighbor was going to the field to haul corn and the boy went along. While in the field the boy helped his host pick about 12 sacks of corn. When the mother returned, the defendant told the mother that the boy was going to stay for dinner, that he had earned his dinner. The boy did stay for dinner and afterwards went home. Later that day the boy came back and went again in the field with the defendant and they picked two sacks of corn. On the way back, the boy

riding the tow bar of the tractor driven by the defendant, was injured so seriously that his leg had to be amputated below the knee. Here again, there was very little question that the little boy, five years old, was a social guest. The incidental services he performed, picking up some corn with the farmer, did not alter his status, and only wilful or wanton misconduct would render the farmer liable.

██ ██ In the trial court's memorandum opinion, the court says that an invitee who is on the premises for a purpose:

1. Connected with the owner's business.
2. An activity which the owner carried on.
3. Permits to be carried on.
4. A mutually beneficial interest.
5. That the invitee is there at the invitation of the owner or occupier.

Also, trial court in the memorandum opinion defines a licensee as a person who is upon the premises with the consent of the owner and not for some purpose connected with the owner's business or activity which the owner carries on or permits to be carried on on the premises. We agree with these definitions. In the memorandum opinion the trial court says that such tests do not cover all of the circumstances which may arise in different cases and the facts in each case must necessarily be examined to determine when an invitee ceases to be such and becomes a licensee, and cites Ellguth v. Blackstone Hotel, 408 Ill. 343, 97 N.E. 2d 290. This court is in full agreement with that statement. We have said many times that each case must rest upon its own facts and that no hard and fast rule can be laid down that will serve in all situations. The facts in the Ciaglo v. Ciaglo case and the Krantz v. Nichols case are substantially different from this case. Under the trial court's definition of

279

an invitee, in this case the plaintiff was unquestionably on defendant's premises for a purpose which the owner permitted to be carried on. There is evidence of at least a tacit invitation.

Since we hold that the granting of the motion for a judgment notwithstanding the verdict was error, the other points raised in the appeal need not be considered. There is nothing in the record showing any ruling by the court on the other matters contained in the post trial motion by the defendant, specifically the motion for a new trial. Failing to insist upon and obtain a ruling on this matter has been held to be a waiver of the right to a new trial. Mandell v. Miller, 14 Ill. App.2d 430, 144 N.E.2d 791; Fulford v. O'Connor, 3 Ill.2d 490, 121 N.E.2d 767; Smith v. Pioneer Trust & Savings Bank, 13 Ill. App.2d 424, 142 N.E.2d 181.

The judgment will be reversed and remanded with instructions to vacate the judgment notwithstanding the verdict and to enter judgment on the verdict of the jury.

Reversed and remanded with directions.

CARROLL, P. J. and ROETH, J., concur.